Good morning. May it please the court, counsel. My name is Alicia Marie Nyer and I represent the appellant Anthony Spence. Foreign acts are best left in foreign territories. Under the guidelines, foreign acts are never considered for the purposes of enhancing a defendant's base offense level. The same considerations considered in all persuasive cases Unless the crime involves a foreign component as an element of the crime, i.e., for example, you go overseas to import child pornography. That doesn't affect this case. It's just as a blanket statement that's not the law. There are crimes that the United States Code defines that involve foreign elements. That is correct. And that is relevant here because there is a blanket presumption that foreign crimes or foreign acts are not considered for the purposes of enhancing an individual's base offense level. There are two exceptions to that general rule. The first exception is where Congress or the United States Sentencing Commission expressly permit and provide for that language within the guideline or the statute. And, Your Honor, it's correct in saying that, yes, in some instances, the commission has allowed for it. For example, in 4A1.2H, it says that it is not appropriate to consider foreign crimes under that subsection of the guideline, but it is relevant under 4A1.3. And so it expressly provides for that information to be considered when determining an individual's guidelines. But also expressly provides when it's not to be considered in some instances. So we've got indications that the commission knew how to exclude it. The commission knew how to include it. So the fact they didn't say one thing or the other, we can't. If it only said it's not excluded in these circumstances, that would support your argument. But to say in one place it's not included and in another place it's not excluded and to say nothing here, we can't tell. Well, respectfully, Chief Judge Carnes, I believe that 4A1.2H is not a rule of exclusion. It simply directs district court judges where to include foreign convictions. So you can't read it as a rule of exclusion, but more as a guidance. But the guidelines do include rules of exclusion. That is correct. They can. Knowing that the commission knows how to exclude something if it wants to do so explicitly. And it didn't do it explicitly here. In the relevant conduct provision of 1B1.3, nor in the guideline of 2G2.2, they did not expressly provide for the courts to take into consideration foreign conduct under any circumstance. Or not to under any circumstance. How we read the guidelines and how we read statutes is because Congress and the Sentencing Commission know when to include the language. Their not mentioning of the language reads for the blanket presumption that it does not apply. What about if that blanket presumption simply does not operate with respect to the guidelines? It is a presumption that has to do with legislation, not with respect to the guidelines. And as Don and Wilkinson and several other cases hold, the purpose of the guidelines is entirely different. The purpose is to gauge the gravity of the offense of conviction. And taking into consideration all of the characteristics of the defendant under 3661. Which it seems like to me what he did in Jamaica here is just part of the characteristics of this defendant. I don't believe that the Don and Wilkinson case and the Castro Valencia case contradict the Azeem case. I think they read harmoniously together. The Azeem case says that the guidelines envision a very limited role for foreign conduct. The Don case goes through an analysis which is the second portion of what we suggest. Is that the extraterritorial prohibition applies unless the guidelines expressly allow for the use or the conduct is inextricably intertwined. Meaning but for that conduct that occurred, the crime of conviction could not have occurred. And it must affect the United States. So Don reads congruently with what Azeem says is yes, there is a blanket presumption. The Castro case, the Wilkinson case, although I believe the holdings in those cases were correct, they didn't perform the analysis in either of those cases. They get to the point where saying 3661 says consider everything, yes. But as a baseline, the guidelines must be properly calculated. And if the guidelines are not properly calculated, then you don't get to the portion of 3661 or 3553A factors. And after the guidelines are correctly calculated, then you can go into the universe of facts about an individual and consider whatever the court wishes. But the district court procedurally erred here when it included foreign acts where USSG 1B1.3 does not expressly permit for that. Do you have a copy of 1B1.3 before you? I can. If you would, I'd like to ask you a question. We have a guideline manual up here if you need it. It's one of my ideas that didn't pan out on closer scrutiny, but I just want to make sure I'm not missing something. 1B1.3A, if you look at A1 and you look at those three lines at the end of A1 that says the conduct to be considered, it has to be conduct that occurred during the commission of the offense of conviction. This is part of relevant conduct. In preparation for the offense or in the course of attempting to avoid detection or responsibility for the offense, that doesn't fit these circumstances. But those three lines just apply to 1B1.3A1 or A1B maybe. They don't apply to the second of parts. Offenses of a character for which they would require grouping. We can't rely on those three lines to help you out. We don't need to rely on those three lines, Chief Judge Carter. But even if we needed to, we couldn't do it. We could not do that if we needed to. But if the court is going to rely on the Seventh Circuit holding in Don, the Seventh Circuit goes through an analysis that is different. We don't get to the prongs of 1B1.3 either under A1, 2, AB. You don't get there. You only have to consider whether it is inextricably intertwined, and that is sort of lending to what 1B1.3A1 states as a part of the same crime in preparation for the offense to avoid detection. The key language, I'm sorry to interrupt you, but I'm still trying to help you out with language. The key language is A2, is it not? And it says it requires that for consideration for the enhancement that the conduct or acts or omissions be part of the same course of conduct or common scheme or plan as the offense of conviction, which was possession in the United States. And transportation. And transportation inside the United States. That is correct. All right, so why was distributing the pornography in Jamaica part of the same course of conduct or common scheme or plan as transporting and possessing it in the United States? It is not, and that is exactly why we are advocating, no matter if you choose Azeem's holding or Don's holding, Mr. Spence prevails and the district court should not have considered it. Mr. Spence's act of distributing those videos while in Jamaica to other Jamaican nationals had no effect or impact on the United States. This is not like the Farrell case out of the Seventh Circuit where the individuals had cocaine and they were, or excuse me, heroin, and they were boarding a plane from Belgium to go to the United States in Chicago and they had the intent to deliver the heroin into Chicago. That was a direct impact on the United States. The facts of the case here show that Mr. Spence believed he deleted the videos after he sent them to individuals in Jamaica. He believed he deleted the videos. He then came into the United States and did not know that the videos had remained on his phone. The forensic evidence that was presented at trial supports that. Video number two is nowhere found in the West application. It's found stored in the gallery. Video number one is nowhere found where Mr. Spence actually sent that video to anyone because he attempted to delete the videos. He had no intent to impact the United States. He had no intent to send the videos to anyone in the United States. So whether you consider that there's a blanket presumption that the foreign acts that occurred on foreign soil are not ever to be considered in purposes of enhancing an individual's offense level or you consider it under Don and say that it's not a part of the same course of conduct because but for his act of distributing it while in Jamaica, the acts of transportation and possession could have still occurred. One does not have to do with the other. There's no link towards the other. And then also there was no impact on the United States. No matter which way you view it, Mr. Spence prevails. And for the reasons stated, we respectfully request that this court vacate his sentence and remand for resentencing without the two-level enhancement for distribution. Thank you. Ms. Nair, I was worried about our chief judge giving you a pop quiz on the guidelines, but you handled that a lot better than I would have. Actually, I was trying to throw you a lifeline, but it was a pitiful lifeline. I'm just, this is not intuitively correct, but that doesn't mean it's not guidelines correct, obviously. I understand that. I understand that this is a matter of first impression and we'll be setting precedent here when the district court needs to decide this matter in the future. And so I appreciate you all for that. Thank you. Thank you. Ms. Swing. Thank you, Your Honor. Good morning, and may it please the court. I want to start kind of where Ms. Nair ended about the fact that this is relevant conduct within the same course of conduct as what Mr. Spence was convicted for. The commentary says that the two offenses must be substantially connected to each other by at least one common factor such as common victims, common accomplice, common purpose, or similar modus operandi. But then on the same course of conduct, offenses that do not qualify as part of a common scheme or plan may nevertheless, and it's kind of hard for me to connect these as part of a common scheme or plan, so I go beyond that, may nonetheless qualify as part of the same course of conduct if they're sufficiently connected or related to each other as to warrant the conclusion they're part of a single episode, spree, or ongoing series of offenses. I assume the ongoing series would be your best argument. Factors include the degree of similarity of the offenses, the regularity repetitions of the offenses, and the time interval between the offenses. So that's really the issue here, isn't it? Yes, Your Honor, but I would like to take one step back and say that I believe that this argument should actually be judged under plain error or considered entirely waived by the appellant here. It has never been their argument that Mr. Spence's conduct shouldn't be considered because it wasn't part of the same course of conduct. It's always been their argument instead that it should not be considered solely because it was foreign conduct. And that's, in fact, where Ms. Nair started with the idea that there's a blanket prohibition against considering foreign conduct, which, of course, the guidelines do not set out. But regardless, this does meet the requirements for it being the same course of conduct. And as you just noted, there's three general things that are looked at there, the similarity of the conduct, the repetition, and the temporal connection. Here, within a period of approximately three weeks, Mr. Spence receives two different videos of child pornography from two different people, one of whom's located in the United States. But he's not charged with receipt. And we could not. I mean, we acknowledge that he could not be charged in the United States with that. Or in Jamaica, where? No, in Jamaica. Jamaican law does prohibit the distribution of child pornography. But I'm talking about the receipt. Yes, Your Honor. Receiving it didn't violate Jamaican law. But then he goes on, Your Honor. He then begins a course of conduct of distributing it admittedly to multiple other people, as is also demonstrated by the phone. He admitted distributing it to his sister, to his wife, to the mother of one of his other children. He showed it to coworkers and to his 17-year-old daughter. He is essentially engaged in a spree with respect to this. Did that violate Jamaican law? Yes, it did, Your Honor. And so then he arrives in the United States and is charged with and convicted of possession and transportation. But this was never the issue before the district court, nor was it brought up in the briefs before this court. Therefore, at most, this should be considered for plain error. And there is 11th Circuit precedent that deals with the connection between possession and distribution and finds them to be connected to each other. And then other circuits as well have considered similar circumstances and found it to be part of the same course of conduct. Ultimately, what we're asking this court to find is that any relevant distribution of child pornography, regardless of where it occurs geographically, is a specific offense characteristic for the purposes of calculating the offense level under the guidelines. This conclusion is compelled by the offense level's intended focus on the factual and logical relationships between a defendant's offense of conviction and his other acts, wherever they might occur. There's simply no—it's not dependent on where an act occurs to look at whether it should be considered in terms of the seriousness of a defendant's offense of conviction. This way of looking at the guidelines is also consistent with the common sense notion that a defendant who transports, possesses, and distributes child pornography has committed a more serious offense than a defendant who possesses and transports child pornography but doesn't distribute it to others. And then ultimately, if the guidelines were to work another way, or the way that the appellant contends they should, if this conduct were only supposed to be considered if it occurred within the United States, it would render the way that the guidelines work in these instances unfair to defendants who are located within the United States. There's no contention here that a defendant who distributed within the United States would have this guideline enhancement applied against them. So there's no reason then that a similarly situated defendant who had engaged in the same conduct and it just happened to occur in Jamaica should not be held accountable under the guidelines for the same conduct. The concerns—yes? I mean, the drug distribution in Egypt, you could make the same argument there in our case, which said you can't include that when you're doing relevant conduct. Only what he distributed to the effect of the United States came in the United States but not something that he did in Egypt. You know the case I'm talking about? Yes, Azeem, yes. But Your Honor, we think that that case is wrongly decided and that it should have been held accountable against the defendant in that case. He was engaging in conduct that was illegal in Egypt and that should have increased his offense level. And so we think Azeem is wrongly decided and that the concerns that are set out in it and the cases that follow are unwarranted. Azeem essentially raises two types of concerns. The first is this idea about the extraterritorial application of the United States laws. And I will point out as an initial matter that that concern applies to legislation only. There's no support in the case law and the appellant cites no cases that say that that concern should be applicable to the guidelines. And, in fact, it makes sense that it's not because the reason behind the concern about extraterritoriality is to prevent unintended clashes of U.S. law and foreign law. It's not possible for the guidelines to conflict with the law of a foreign country. Only legislation could do that. And so the idea is that we need to be sure that Congress wanted a conflict to arise or was aware of it and thought about it. But those same considerations simply aren't applicable to the guidelines. The other concern that Azeem relies on is the language in 4A.1.2 that the guidelines should not consider foreign convictions. And essentially, again, there's a good reason for that exclusion. And the reason for that exclusion is when calculating a criminal history category, you look at the length of sentence. That's one of the factors that plays into a defendant's criminal history category. But foreign countries may have different ways of doing things than the United States does. A defendant may be subject to dramatically more punishment for a foreign conviction than he ever would be in the United States. So it makes sense that there might be a general exclusion in that context. But that same logic does not apply to relevant conduct, which, after all, is relevant conduct, not relevant crimes or convictions. And ultimately, the fact that the relevant conduct doesn't even have to be a crime, a charged crime or an element of a crime. And Dawn gives a couple of good examples in that context. First, they note that acquitted conduct can be considered in terms of finding relevant conduct. And they also note that in the gun and drug world, a drug sentence can be enhanced merely for possession of a firearm, even if the possession of the firearm itself is not illegal. And so ultimately, the concerns that are set forth in Azeem are not persuasive in this area. Your Honors, if you have any other... I do, actually. So we get these cases and we understand the legal issues and we try to prepare for them. But I'm just dying to know what's going on. We don't see many cases involving child pornography where the sentencing guideline range was 210 to 262. The sentence imposed is 68 months. And I guess you're asking us to affirm that 68-month sentence. Yes, Your Honor. I mean, I was trying to figure out why this case is different. Does it have to do with the expert testimony about Mr. Spence's IQ level? That was presented to the district court. I think it's undisputed. I think both parties' briefs acknowledge that here the district court departed or varied significantly from the guidelines because he felt that there wasn't a likelihood of recidivism and that Mr. Spence was not likely to commit a hands-on offense, nor this was the first time he was showing up for this kind of behavior, essentially. And the district court stated that in his sentencing colloquy. So those were the reasons why. But I do want to make one other point of something that the district court said in his sentencing or during sentencing. The appellant even there contended that he had mistakenly brought the pornography into the United States. And as the district court noted, that issue is really not before this court. The jury decided that it was intentional and it was knowing, and that's really not an issue that's left to be litigated any longer. So it's not that Mr. Spence thought he deleted this. He was found guilty of transporting and possessing this same child pornography that he distributed when he was in Jamaica. All Judge Mendoza had to do is say, this is iffy, but even if it didn't apply, I'd engage in exactly the same variance and end up in exactly the same sentence. Not many district judges do that. They're prerogative. And when they don't, I can't remember the name of the case, but Justice Sotomayor wrote for a court, in effect, there's no harmless error in sentencing guidelines of range calculation. So we've got to do the sword dance and figure out this issue, even though I can't imagine Judge Mendoza changing his position if we agreed with the defendants and sent it back. I can't imagine that he would change his position based on the non-application of that. We all change views over time, and they're certainly entitled to argue that, but this seems . . . it's very unusual to have this much down with them. But that's where we are, and we'll do our best on it after we hear from Ms. Nair. Five more minutes, assuming you're done. Thank you very much, Your Honors. Thank you, Honor. I just wanted to correct a couple of points first. Counsel stated that the videos were received from an individual in New York. The record does not support that contention. The record supports that Mr. Spence met an individual while in New York and that he received a video from that individual. He does not state the nationality of the person. There's no record evidence that shows how the video was sent to him, from what phone number, or any of that information that suggests that the individual was actually located in the United States. One of the individuals, I guess it was the 9-year-old, spoke English, right? That is correct. They speak English in Jamaica as well, and throughout a large part of... Beautiful cadence of English. The second point that I wanted to make is that counsel also stated that this should be considered under plain error. That was never presented in their brief for us to even be able to address that issue. The de novo standard is the proper standard for this court to review, and that is the standard in which we are requesting. Yes, they couldn't argue that because you didn't argue the issue that Judge Garns brought up in your brief. That is correct. They could have addressed that issue had they chosen to and said that they could have anticipated that to be an argument, as they did today, and argued that in their brief. But then there's another point that the government made. They stated that this issue of Mr. Spence's conduct being considered under relevant conduct was never addressed at the district court level, and that is inaccurate as well. It is not relevant because it occurred on foreign soil. That actual objection was made and preserved. The analysis that would have needed to be drawn would have been a requirement from the government to present at the district court. The government presented no facts that this affected the United States, that it was a part of the same course of conduct in their sentencing, and Judge Mendoza made no findings of facts to either of those issues. So the minimum that would be required is that if the government is presenting that as an argument, this would need to be remanded to the district court for them to make findings based on the Don case that the government is asserting is the standard by which this court should adopt as well. So at minimum, that would need to be done. It's not a difficult case, and I understand Chief Judge Karn's concern and Judge Martin's concern that it's a huge variance. You don't see very many cases where you go from 210 all the way down to 68 months. But what we do know in this case is the mandatory minimum that Mr. Spence faced was 60 months. Judge Mendoza knows the law. He knows the language that he could have submitted that would have made this foolproof for appeal. He did not. So there is an eight-month gap, and the minimum guideline for the two-level enhancement that was applied is 48 months. It is reasonable to consider that if this were to go back on remand for resentencing, that Mr. Spence could receive eight months off of his sentence and receive the very minimum of the guidelines, which is 60 months. There are no further questions? I don't believe there are. Thank you. Thank you. Our next case up is Bourbon v. City of Neptune Beach. Thank you.